**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

RICKY TODD,                                      )        CASE NO. 1:21-CV-01006-CEH
                                                 )
             Plaintiff,                          )
                                                 )
                                                 )        MAGISTRATE JUDGE
      v.                                         )        CARMEN E. HENDERSON
                                                 )
COMMISSIONER OF SOCIAL SECURITY,                 )
                                                 )        MEMORANDUM ORDER AND
             Defendant,                          )        OPINION
                                                 )

## I.  Introduction

Plaintiff, Ricky Todd, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 17). Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Todd SSI.

## II.  Procedural History

On August 28, 2019, Claimant filed an application for SSI, alleging a disability onset date of January 2, 2017. (ECF No. 10, PageID #: 138–39). The application was denied initially and upon reconsideration, and Todd requested a hearing before an administrative law judge ("ALJ").  (ECF No. 10, PageID #: 175). On September 10, 2020, an ALJ held a hearing, during which Todd, represented by counsel, and an impartial vocational expert testified. (ECF No. 10, PageID #: 98). On October 20, 2020, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 10, PageID #: 75). The ALJ's decision became final on March 9, 2021, when the Appeals Council declined further review. (ECF No. 10, PageID #: 56).

1

On May 13, 2021, Todd filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 19, 20). Todd asserts the following assignment of error:

> The ALJ's RFC is not supported by substantial evidence because he failed to evaluate NP Solomon's opinion according to the appropriate standards and regulations requirements.

(ECF No. 14 at 3).

## III.     Background[1]

### A.          Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Todd's hearing:

> At the hearing, the claimant testified that he is unable to work on a full-time basis because he has "extreme" lower back pain and his knee goes out "every so often." . . . The claimant further testified that he is depressed daily because he has no money and is unable to work. He has lack of focus and he does not like being around people that aggravate him or set him off. On a typical day, he stays in his room. While there, he talks or plays games on his phone and he watches movies on his computer. He does not do household chores, but he goes to the laundromat to do his laundry.

(ECF No. 10, PageID #: 84).

### B.          Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> On September 9, 2019, Stanley Fireman, M.Ed., LISW-S, noted that the claimant continued to feel unmotivated and depressed. Mr. Fireman recommended individual therapy twice a month for three months. Mr. Fireman also noted that he would speak to the claimant's primary care provider about an antidepressant for the claimant (1F/15).

---

[1] Todd's appeal relates to an opinion regarding his mental impairments. Because he did not challenge anything regarding his physical impairments, the Court's discussion will relate to his mental impairment records only.

On September 16, 2019, the claimant was taking Lexapro 20 mg and Mr. Fireman noted that the claimant was significantly more animated, his affect appeared positive, and he did not appear to be as depressed as before (1F/14).

On September 18, 2019, the claimant's mood was depressed. Ms. Meyers switched the claimant from Lexapro to Duloxetine (Cymbalta) 30 mg for depression, noting that it might be more helpful for his chronic pain. She also referred the claimant to pain management (1F/12-14).

On September 23, 2019, . . . the claimant was alert, well appearing, and in no acute distress. . . . Dr. Basi started Diclofenac and told the claimant to increase his Cymbalta to 60 mg (1F/8-12). . . .

On September 26, 2019, Mr. Fireman noted that the claimant's mood appeared "visibly better" (1F/8). . . .

On October 3, 2019, the claimant saw Ms. Meyers. . . . On examination, the claimant was alert and in no distress. The physical examination was normal. The claimant's mood and affect were normal. Ms. Meyers continued the claimant's medications (2F/18-19).

On November 5, 2019, the claimant attended a psychological consultative examination conducted by Hershel Pickholtz, Ed.D. When asked what was stopping him from working, the claimant stated, "bad back and I can't use my hands very long and bad knees and my right knee is worse." On examination, the claimant was dressed neatly and appropriate. His motoric activity appeared to be a little bit constricted and a little bit sluggish and slow. He was not fully compliant throughout the evaluation. At times, Dr. Pickholtz had to push him and prod him to respond and at times his responses were a little bit contradictory. His eye contact was appropriate. His verbalizations were fairly easily understood and intelligible. The tone of his voice appeared to be a little bit to moderately depressed. His verbalizations were fairly logical, coherent, relevant, and g[o]al directed. His overall capacities for associative thinking and cognitive levels of functioning fell between the low average to average ranges. His overall affect appeared slightly to somewhat constricted and the mood appeared to be slightly to somewhat depressed. The claimant reported anxiety issues since last year. In terms of sensorium and cognitive functioning, the claimant was well oriented to time, place and person; his abilities to recall long-term history fell within the low average range; his overall abilities to recall five objects after a 20-

minute lapse of time fell within the average range; his overall levels of intellectual functioning fell within the average range; the abilities for arithmetic computational capacities fell within the average range and he was able to solve multi-operational math problems; his current capacities to define words fell within the average range; his current capacities to recall a sequence of numbers fell within the average range; he was able to recall 6 digits forwards and 4 digits backwards; the capacities for abstract thinking fell within the average range; recall of long-term history, based upon remembering common historical and cultural information, fell within the average range; and based upon the responses to the mental status operations and the descriptions of his daily living activities, his estimated levels of intelligence fell within the average ranges. Dr. Pickholtz diagnosed the claimant with adjustment disorder with depressed mood, alcohol use disorder in sustained remission, cannabis use disorder in almost full remission, and cocaine use disorder in recent remission (3F). . . .

On November 25, 2019, the claimant saw Ms. Meyers. . . . Regarding his depression, the claimant stated that he recently got into an argument with his mother and adult son. He was frustrated because he was trying to talk to his mother and his son kept interjecting into the conversation. He said he got very upset when his son did this and he felt like his mother always took his son's side. Mr. Fireman had recently retired and the claimant was having difficulty with not having someone to talk to and he could not get in to see anyone until January 2020. On examination, the claimant was alert and in no acute distress. His mood was depressed, his affect was flat, his behavior was slowed and withdrawn, but his thought content was normal and his cognition was normal. The claimant's diabetes mellitus was improved and his hypertension was under good control. Ms. Meyers continued Cymbalta 60 mg and referred the claimant to the behavioral health department (4F/8-10). . . .

On March 24, 2020, the claimant had a telephone visit with nurse practitioner Deborah Solomon. The claimant was taking Seroquel and Cymbalta. With Seroquel, he was sleeping about eight or nine hours and he said that Cymbalta helped to balance out the Seroquel. On examination, the claimant's speech was slurred; his thought process was logical, coherent, and rational, and the claimant denied seeing things; his fund of knowledge was appropriate and adequate; he was oriented; his memory was good; his concentration was normal and variable; his mood was sad; and his affect was flat. Ms. Solomon noted that the claimant had

moderate symptoms and moderate difficulty in social, occupational, or school functioning. Ms. Solomon continued Cymbalta and Seroquel for bipolar I disorder and schizoaffective disorder (11F/406-407).

On April 21, 2020, the claimant had a telephone visit with Ms. Solomon. The claimant reported not sleeping and irritability. The claimant said that he had not been sleeping as he did not like to take the Seroquel because it knocked him out too much. He also said he had been trying to stay away from people that annoyed him, but he and his sons had been arguing more, he was angrier, and getting more irritable. On examination, the claimant's speech was clear and distinct; his thought process was logical, coherent, rational, but tangential; his fund of knowledge was appropriate and adequate; he was oriented; his memory was good; his concentration was variable; his mood was flat; and his affect was blunted. Ms. Solomon noted that the claimant had moderate symptoms and moderate difficulty in social, occupational, or school functioning. Ms. Solomon talked with the claimant about putting him on a mood leveler such as Depakote and decreasing his Seroquel. The claimant was agreeable to that plan (11F/411-412).

On May 12, 2020, the claimant had a telephone visit with Ms. Solomon. The claimant reported that he was feeling better. His sleep was good and he felt that he was better able to manage things now. He said that Mother's Day went well and he and his adult sons were staying out of each other's way. On examination, the claimant's speech was clear and distinct; his thought process was logical, coherent, and rational; his fund of knowledge was appropriate and adequate; he was oriented; his memory was good; his concentration was normal; his mood was flat; and his affect was flat. Ms. Solomon noted that the claimant had some "mild" symptoms or some difficulty in social, occupational, or school functioning, but was generally functioning pretty well. Ms. Solomon continued the claimant's medications (11F/430-431). . . .

On August 12, 2020, the claimant saw Ms. Solomon. The claimant reported irritability, but he felt that his Seroquel, Cymbalta, and Depakote helped him a lot and he did not feel like he needed a medication change. On examination, the claimant was appropriately dressed; his speech was clear and distinct; his thought process was logical, coherent, and rational; his fund of knowledge was appropriate and adequate; he was oriented; his memory was good; his concentration was preoccupied; his mood was sad; and his affect was flat. Ms. Solomon noted that the claimant had some "mild" symptoms or some difficulty in social,

occupational, or school functioning, but was generally functioning pretty well. Ms. Solomon continued the claimant's medications and asked him to return in three months (13F/9-11).

(ECF No. 10, PageID #: 84–88).

### C.     Opinion Evidence at Issue

On February 11, 2020, Deborah Solomon, Todd's Nurse Practitioner, completed a mental capacity assessment. (ECF No. 10, PageID #: 779). Ms. Solomon opined that Todd has marked limitations in understanding, remembering, or applying information. (ECF No. 10, PageID #: 779). Ms. Solomon suggested that Todd has mainly extreme limitations in concentrating, persisting, and maintaining pace. (ECF No. 10, PageID #: 780). She also opined that Todd has mainly extreme limitations in his ability to adapt or manage himself. (ECF No. 10, PageID #: 780). Finally, Ms. Solomon indicated that Todd has mainly extreme limitations in interacting with others. (ECF No. 10, PageID #: 781). The ALJ concluded that this opinion was not persuasive as it was not supported by the objective medical evidence or Ms. Solomon's explanations. (ECF No. 10, PageID #: 91).

## IV.     The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: lumbar spondylosis without myelopathy or radiculopathy and lumbago without sciatica, diabetes mellitus, hyperlipidemia, essential hypertension, depression, anxiety, adjustment disorder with depressed mood, bipolar disorder, and schizoaffective disorder (20 CFR 416.920(c)).

> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

6

perform medium work as defined in 20 CFR 416.967(c) except he can frequently climb ramps and stairs; frequently stoop, kneel, crouch or crawl. He can complete tasks that do not require a fast work pace or strict production quotas. He is capable of completing tasks in which he can work independently of others with no more than superficial contact with the general public, and he would not be in isolation, but he would not be required to do tandem tasks. He is capable of completing tasks in which changes are infrequent and can be explained. "Superficial" means the jobs duties cannot require arbitration, negotiation, conflict resolution; management or supervision of others; or being responsible for the health, safety or welfare of others.

(ECF No. 10, PageID #: 80–81, 83).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.        Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C.        Discussion**

Todd raises one issue on appeal. He argues that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to properly evaluate Nurse Practitioner Solomon's opinion according to the appropriate regulations. Indeed, at Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules*

8

*Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . . ").

Todd's nurse practitioner, Ms. Solomon, completed a mental capacity assessment. She stated that Todd has diagnoses of Bipolar I and schizophrenia. (ECF No. 10, PageID #: 779). Ms. Solomon opined that Todd has marked limitations in understanding, remembering, or applying information. (ECF No. 10, PageID #: 779). She explained that Todd lacks insight and judgment, he is depressed and lacks motivation, and he is withdrawn and is listless. (ECF No. 10, PageID #: 779). Ms. Solomon suggested that Todd has mainly extreme limitations in concentrating, persisting, and maintaining pace. (ECF No. 10, PageID #: 780). She reasoned that "at present he is struggling to maintain a day routine that includes being able to wash self and cook and wash clothes. He may initiate something and lose interest in it." (ECF No. 10, PageID #: 780). She

9

also opined that Todd has mainly extreme limitations in his ability to adapt or manage himself. (ECF No. 10, PageID #: 780). She stated that Todd "has auditory and visual hallucinations where he will see family members. He will begin answering a question and switch subjects to something unrelated. He struggles in maintaining his hygiene." (ECF No. 10, PageID #: 780). Finally, Ms. Solomon indicated that Todd has mainly extreme limitations in interacting with others. (ECF No. 10, PageID #: 781). She suggested that this extreme limitation was due to the fact that Todd has some internal stimulation and can easily misinterpret things. (ECF No. 10, PageID #: 781).

The ALJ found that this opinion was not persuasive. He reasoned:

> Ms. Solomon's medical opinion is not persuasive because such marked and extreme limitations are not supported by the objective medical evidence or her explanations. On examinations, nurse practitioner Deborah Solomon documented that the claimant's mood was consistently sad or flat, but his thought process was consistently logical, coherent, and rational although on one occasion it was also tangential; his fund of knowledge was consistently appropriate and adequate; he was consistently oriented; his memory was consistently good; and his concentration was usually normal, but could be variable and preoccupied (see above). In treatment notes, Ms. Solomon noted that the claimant had no more than "moderate" symptoms and "moderate" difficulty in social, occupational, or school functioning (see above). There is no evidence of lack of insight and judgment, ongoing auditory or visual hallucinations, ongoing struggles to maintain hygiene or a daily routine, internal stimulation, and/or easily misinterpreting things. Ms. Solomon's medical opinion is not persuasive because such marked and extreme limitations are not consistent with the limited course of treatment including with Ms. Solomon. Significantly, the medical evidence of record shows that the claimant's symptoms are adequately controlled with Seroquel, Cymbalta, and Depakote.

(ECF No. 10, PageID #: 89).

Todd argues that the ALJ's conclusion that the opinion was not supported was incorrect because the opinion "was well-supported by [Ms. Solomon's] explanations." (ECF No. 14 at

12). Todd asserts that Ms. Solomon "precisely explained" her findings. (ECF No. 14 at 12). He states that these findings were based on Ms. Solomon's observations of Todd's signs and symptoms which constitute objective medical evidence. The Commissioner responds that "[t]he supportability problem with this opinion was not that NP Solomon provided no supporting statements, but that her provided explanations were unmoored from the evidence." (ECF No. 19 at 13). The Court agrees.

The ALJ sufficiently explained the opinion's lack of supportability and consistency and supported his conclusions with substantial evidence. Although it is true that Ms. Solomon gave explanations for her opinions, her explanations lacked support. For example, as the ALJ pointed out, Ms. Solomon stated that Todd has auditory and visual hallucinations where he will see family members. However, there was no evidence of ongoing visual or auditory hallucinations. In fact, at the hearing, Todd stated he had not had a hallucination since he was a teenager. (ECF No. 10, PageID #: 119). Ms. Solomon also reasoned that Todd struggles to maintain his hygiene. Again, there was no evidence in the record or in her treatment notes that this was true. Similarly, in her treatment notes Ms. Solomon noted no more than "moderate" symptoms and "moderate" difficulty in social, occupational, or school functioning. Yet, in this opinion, Ms. Solomon indicated that Todd had extreme limitations in interacting with others. Thus, there is ample support for the ALJ's conclusion that the opinion was not supported. The Court finds no error with this determination.

Additionally, the ALJ concluded that the opinion's extreme limitations were not consistent with Todd's limited course of treatment and the adequate control of his symptoms with medication. Todd does not appear to dispute these statements. Todd, however, asserts that Ms. Solomon's opinion was consistent with the medical evidence, pointing to findings of

depression, withdrawal, slow speech, and depressed tone. (ECF No. 14 at 16). Not only do these findings fail to support such extreme limitations, but also this misunderstands Todd's role in this challenge. "[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports [his] position. Rather, [the claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). The ALJ explained how the opinion was not consistent with the medical record. The ALJ's conclusion was supported by substantial evidence. Accordingly, the Court finds no reason to disturb the ALJ's decision.

**VI.    Conclusion**

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Todd SSI.

Dated: June 2, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE